IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE, CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 13 C 5015 |
| v. | ) |
| | ) |
| STEVE STERGO, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On August 29, 2013, Plaintiff Scottsdale Insurance Company ("Scottsdale") filed an Amended Complaint against Defendants Steve Stergo ("Steve Stergo") d/b/a Steve Stergo Roofing ("Stergo") and Lawrence S. Brodsky ("Brodsky") based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Scottsdale seeks a declaratory judgment that it owes no duty to defend or indemnify Stergo in the lawsuit Brodsky has brought against Stergo in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois. On September 27, 2013, Defendant/Counter-Plaintiff Brodsky filed a Counterclaim seeking declaratory relief in its own right, including a declaration regarding Scottsdale's "conflicted defense" with Stergo.[1] Before the Court are Brodsky's and Scottsdale's cross-motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants Scottsdale's summary judgment motion and denies Brodsky's summary judgment motion. The Court dismisses this lawsuit in its entirety.

---

[1] When denying Scottsdale's Rule 12(c) motion for judgment on the pleadings, the Court concluded that Brodsky has prudential standing to bring his Counterclaims. (R. 37, 7/14/14, Order, at 5-7.)

**BACKGROUND**

I. **Underlying Action**

On April 25, 2013, Brodsky instituted a civil class action captioned *Lawrence S. Brodsky v. Steve Stergo d/b/a Stergo Roofing*, Case No. 13 CH 1380, in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois ("Underlying Action"). (R. 62, Def.'s Rule 56.1 Stmt. Facts ¶ 1; R. 65, Pl.'s Rule 56.1 Stmt. Facts ¶ 13.) In the Underlying Action, Brodsky alleges that Stergo violated the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227, *et seq*., ("TCPA"), and the regulations promulgated under the TCPA by sending unsolicited junk fax advertisements to Brodsky and the putative class members. (Def.'s Stmt. Facts ¶ 3.) Specifically, Brodsky alleges that on or about April 28, 2008, Stergo transmitted an unsolicited facsimile to him. (Pl.'s Stmt. Facts ¶ 14; R. 1-1, Class Action Compl. ¶ 12.) While the state court has yet to certify a class in the Underlying Action, Brodsky seeks to represent himself and "a class of similarly situated persons who were also sent junk faxes by Stergo at any time on or after June 2, 2005." (R. 15, Def.'s Counter-Compl. ¶ 6; Pl.'s Stmt. Facts ¶ 16.) Brodsky seeks statutory damages in the amount of $500 for each TCPA violation. (Pl.'s Stmt. Facts ¶ 15; Class Action Compl. ¶ 2.)

II. **Relevant Commercial General Liability Insurance Policies**

Scottsdale issued a commercial general liability ("CGL") policy, No. CLS 1236069, to Steve Stergo d/b/a Stergo Roofing for the policy period of April 11, 2006 to April 11, 2007. (Pl.'s Stmt. Facts ¶ 6.) Scottsdale cancelled this policy effective July 6, 2006 for non-payment of a premium. (*Id.*) In addition, Scottsdale issued another CGL policy, No. CLS 1583922, to Steve Stergo d/b/a Stergo Roofing for the policy period of June 2, 2009 to June 2, 2010. (*Id*. ¶ 7.)

2

Scottsdale cancelled this policy effective September 22, 2009 at the request of the insured. (*Id*.) Likewise, Scottsdale issued a CGL policy, No. CPS 1404489, to Steve Stergo d/b/a Stergo Roofing for the policy period of June 29, 2011 to June 29, 2012. (*Id*. ¶ 8.) Scottsdale also issued a CGL policy, No. CPS 1638989, to Steve Stergo d/b/a Stergo Roofing for the policy period of August 1, 2012 to August 1, 2013. (*Id*. ¶ 9.) On March 24, 2013, Scottsdale cancelled this policy due to the non-payment of a premium. (*Id*.)

Each of these policies included the following insuring agreement applicable to Coverage A:

> **BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages….
>>
>> b. This insurance applies to "bodily injury" and "property damage" only if:
>>
>>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>>>
>>> (2) The "bodily injury" or "property damage" occurs during the policy period; ….

(Def.'s Stmt. Facts ¶ 8.) The policies at issue expressly define "property damage" as follows:

> "Property damage" means:
>
>> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be considered to occur at the time of the physical injury that caused it; or
>>
>> b. Loss of use of tangible property that is not physically injured. All such loss of use will be considered to occur at the time of the

3

"occurrence" that caused it....

(*Id*. ¶ 9.) All of these policies define "occurrence" as follows: "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id*. ¶ 10.)

Each of the Scottsdale policies at issue included the following insuring agreement applicable to Coverage B:

> **PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> **1. Insuring Agreement**
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking such damages....
>>
>> b. This insurance applies to "personal and advertising injury" only if:
>>
>>> (1) The "personal and advertising injury" is caused by an offense arising out of your business; and
>>>
>>> (2) The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period....

(*Id*. ¶ 11.) The policies define "personal and advertising injury" to include the following:

> "Personal and advertising injury" means injury ... arising out of one or more of the following offenses: ...
>
>> e. Oral or written publication, in any manner, of material that violates a person's right of privacy....

(*Id*.)

4

Each of the Scottsdale policies at issue contained an endorsement entitled "EXCLUSION–VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION." (*Id*. ¶ 12.) The exclusion specifically states that the insurance policies do not apply to "bodily injury," "property damage," or "personal and advertising injury"... "arising directly or indirectly out of any action or omission that violates or is alleged to violate ... [t]he Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law." (*Id*.; R. 62-2, 62-3, 62-4, 62-5, Def.'s Exs. B-E.)

### III.  Stergo's Tender

In May 2013, Stergo tendered a report notifying Scottsdale about the Underlying Action. (*Id.* ¶ 13.) Upon receiving notice of the Underlying Action, Scottsdale acknowledged the report and advised Stergo that it had assigned Sarah Costilow to handle the claim. (*Id*. ¶ 14; Pl.'s Stmt. Facts ¶ 17.) Subsequently, Costilow discussed the claim and lawsuit with Steve Stergo on the telephone. (Def.'s Stmt. Facts ¶ 15; Pl.'s Stmt. Facts ¶ 18.) During the call, Costilow informed Steve Stergo that Scottsdale would provide him a defense in the Underlying Action and that he could choose his own defense counsel whose fees Scottsdale would pay. (Def.'s Stmt. Facts ¶ 15.) Steve Stergo selected Mitch Frazen of Litchfield Cavo, LLP as his independent defense counsel, after which Costilow sent Frazen a confirmation letter on May 16, 2013. (Pl.'s Stmt. Facts ¶ 21.) On May 28, 2013, Sarah Delaney of Goldberg Segalla LLP–on behalf of Scottsdale–sent a coverage position letter to Steve Stergo. (*Id*. ¶ 22.) The May 28, 2013 letter confirmed that Scottsdale had retained Mitch Frazen as Stergo's defense counsel. (*Id*.; R. 65-10, Pl.'s Ex. J, at 7.) The May 28, 2013 letter also indicated that Scottsdale accepted Stergo's tender

of defense under a reservation of rights to contest its duties to defend and indemnify Stergo, especially in light of certain TCPA exclusions in the policies at issue. (Pl.'s Ex. J., at 5-7; Def.'s Stmt. ¶¶ 19, 23.)

At his deposition, Steve Stergo testified about his conversation with Scottsdale's Sarah Costilow and his choice of defense counsel, Mitch Frazen. (Pl.'s Stmt. Facts ¶ 23.) In particular, Steve Stergo testified as follows:

> Q: Did Sarah Costilow tell you that you had the opportunity to choose your own defense counsel in the Brodsky lawsuit?
>
> A: Yes.
>
> Q: And she told you that Scottsdale would pay for that defense counsel?
>
> A: From what I remember, yes.
>
> Q: Did Scottsdale say no or limit your selection of defense counsel in any way?
>
> A: No.
>
> Q: So Sarah, basically, said you can choose anybody you want?
>
> A: Yes.
>
> Q: Did you ask for Mitch Frazen?
>
> A: I did.

(R. 65-11, Pl.'s Ex. K, Stergo Dep., at 50-51.)

Further, at his deposition, Steve Stergo testified that he has been satisfied with Frazen's representation in the Underlying Action and that he has not feel deprived of his choice of counsel. (Pl.'s Stmt. Facts ¶¶ 24, 25.) More specifically, he testified:

> Q: Has Mitch Frazen done a good job for you?
>
> A: Yes.

6

Q: Do you feel deprived of your choice of counsel?

A: No.

Q: Has Mitch stuck by you this whole time?

A: Yes

Q: Do you see any reason to abandon him now?

A: No.

Q: If you were to go back to the beginning, would you select someone other than Mitch Frazen?

A: Nope.

...

Q: Do you feel that Mitch has made you his priority?

A: Yes.

Q: That he's looking out for you?

A: Yes.

....

Q: Is it fair to say, Mr. Stergo, that you had a good relationship with Mr. Frazen?

A: Yes.

Q: And had you learned to trust Mr. Frazen?

A: Yes.

Q: And did you feel he was loyal to you?

A: Yes.

Q: Did you feel that there was any chance that he was going to do anything against your interests while he was representing you?

A: No.

Q: Do you have any doubt about that at all?

A: No.

Q: And that's why you wanted him as your lawyer, is that right?

A: Yes.

(Stergo Dep., at 53, 62, 69-70.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

The parties do not dispute that Illinois law governs this insurance coverage case. *See Auto–Owners Ins. Co. v. Websolv Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.")

(internal citation and quotation marks omitted). In Illinois, "[a]n insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Westfield Ins. Co. v. Vandenberg,* 796 F.3d 773, 777 (7th Cir. 2015) (citation omitted). "The primary objective in construing a contract is to give effect to the intent of the parties." *Minnesota Life Ins. Co. v. Kagan*, 724 F.3d 843, 849 (7th Cir. 2013) (citation omitted). When determining coverage, Illinois courts construe insurance policies as a whole and give the policy's terms their plain and ordinary meaning. *See West Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.,* 794 F.3d 666, 673 (7th Cir. 2015); *Panfil v. Nautilus Ins. Co.*, ___ F.3d ___, 2015 WL 4940358, at *4 (7th Cir. Aug. 20, 2015).

## I. Conflict of Interest Determination

Brodsky argues that Scottsdale is estopped from bringing any policy defenses contesting coverage because Scottsdale has provided a "conflicted defense" to Stergo in the Underlying Action. On the other hand, Scottsdale maintains that after it recognized that its coverage position created a conflict of interest, it fulfilled its defense obligation by affording Steve Stergo the right to be defended by counsel of his own choice whose fees Scottsdale would pay.

As the Supreme Court of Illinois instructs, "where a complaint against an insured alleges facts within or potentially within the coverage of the insurance policy, and when the insurer takes the position that the policy does not cover the complaint, the insurer must: (1) defend the suit under a reservation of rights; or (2) seek a declaratory judgment that there is no coverage." *Standard Mut. Ins. Co. v. Lay*, ___ Ill.2d ___, 989 N.E.2d 591, 596, 371 Ill.Dec. 1, 6 (Ill. 2013); *see also Panfil*, ___ F.3d ___, 2015 WL 4940358, at *2; *Willis Corroon Corp. v. Home Ins. Co.,* 203 F.3d 449, 452 (7th Cir. 2000). "If the insurer fails to take either of these actions, it will be

9

estopped from later raising policy defenses to coverage." *Standard Mut. Ins. Co.*, 989 N.E.2d at 596 (citing *State Farm Fire & Casualty Co. v. Martin,* 186 Ill.2d 367, 371, 238 Ill.Dec. 126, 710 N.E.2d 1228 (Ill. 1999)). If the insurer decides to defend the suit under a reservation of rights, thereby acknowledging a conflict of interest, "the insured has the right to reject the defense being offered by the insurer, select an attorney of its own choice, control the defense of the case, and recover its defense costs from the insurer." *Central Mut. Ins. Co. v. Tracy's Treasures, Inc.,* 19 N.E.3d 1100, 1111, 385 Ill.Dec. 904, 915 (1st Dist. 2014); *see also R.C. Wegman Const. Co. v. Admiral Ins. Co.,* 629 F.3d 724, 729 (7th Cir. 2011).

As discussed, Scottsdale acknowledged its conflict and offered Steve Stergo his choice of counsel. If, on the other hand, Scottsdale had decided to defend Steve Stergo without giving him choice of counsel, Scottsdale would have had to do so under a proper reservation of rights. *See Utica Mut. Ins. Co. v. David Agency Ins., Inc.,* 327 F. Supp. 2d 922, 929 30 (N.D. Ill. 2004) ("If a conflict of interest exists and the insurer nonetheless chooses to defend the insured, the insurer must do so under a proper reservation of rights or risk being estopped from raising coverage defenses."); *see also Standard Mut. Ins. Co.*, 989 N.E.2d at 596 (the "reservation of rights must specifically refer to the policy defense that may be asserted and to the potential conflict of interest.").

In its motion, Brodsky argues that Scottsdale breached its duty to defend because it failed to fully inform Steve Stergo about his choice of counsel and failed to properly disclose the conflicts of interest–despite Scottsdale's offer of paying the costs of independent counsel and Steve Stergo choosing Mitch Frazen as his counsel. Although Brodsky's argument is based on a faulty premise, for the sake of completeness, the Court thus turns to the correspondence and

10

communications between Scottsdale, Steve Stergo, and his defense counsel regarding the defense of the Underlying Action in relation to Brodsky's argument.

Viewing the facts and all reasonable inferences in Brodsky's favor, after Steve Stergo tendered the report about the Underlying Action to Scottsdale, Scottsdale acknowledged the report and assigned Sarah Costilow to handle the claim in correspondence dated May 8, 2013. Thereafter, Costilow and Steve Stergo discussed the claim and lawsuit on the telephone. At his deposition, Steve Stergo testified that Costilow told him that he had the opportunity to choose his own defense counsel in the Underlying Action, that Scottsdale would pay for that defense counsel, that Scottsdale did not limit his selection of defense counsel, and that he asked for Mitch Frazen of Litchfield Cavo, LLP, to be his defense counsel in the Underlying Action. On May 16, 2013, Scottsdale sent a letter (via email) to Frazen stating that Steve Stergo asked Scottsdale to retain him as Stergo's defense counsel. The May 16, 2013, letter specifically stated: "Please note we are currently affording a defense in the subject litigation matter to Steve Stergo dba Stergo Roofing pursuant to a commercial general liability policy which was in force on the dates listed above. We are providing a defense under a full Reservation of Rights and will forward a co[p]y to you in the future." (R. 65-9, Pl.'s Ex. 7, 5/16/13 letter.) The May 16, 2013 letter also stated: "Based upon our investigation to date, and the allegations contained within the pleadings, we understand the subject litigation matter arises out of allegations of fax blasting. As you are aware, this case is much like the case styled *GM Sign v. Stergo* which you recently defended."[2] (*Id.*)

---

[2] Steve Stergo and Stergo Roofing removed a similar TCPA class action, *G.M. Sign, Inc. v. Stergo*, 09 CH 1941, from the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois, to the United States District Court for the Northern District of Illinois on August 5,

In a letter dated May 28, 2013 to Steve Stergo, Scottsdale, via its attorney Sarah Delaney at Goldberg Segalla, LLP, explained its coverage position regarding the Underlying Action. In the May 28, 2013 letter, Scottsdale's counsel described the policies at issue and Underlying Action in detail, including the TCPA exclusions. Further, Scottsdale gave its coverage position, namely, that it was disclaiming its duty to defend and indemnify as to the CGL policies CLS158922, CPS1404489, and CPS1638989. (Def.'s Stmt. Facts ¶ 20.) Moreover, the letter explained that as to policy CLS1236069, with the policy period of April 11, 2006 to July 6, 2006, Scottsdale "will agree to defend Steve Stergo d/b/a/ Stergo Roofing at this time until a determination is made on the certification of the class action. If the case is not certified as a class action as is sought, the coverage would not be afforded for defense or indemnification." (Pl.'s Ex. J, at 7; Def.'s Stmt. Facts ¶ 22.) In short, Scottsdale stated that it would provide a defense under CLS1236069 subject to a reservation of rights. (Def.'s Stmt. Facts ¶ 20.) Also, in the letter, Scottsdale asserted the following bases for its reservations of rights under policy CLS1236069:

> None of the factual allegations contained in the Plaintiff's Complaint and none of the Causes of Action in claims set forth in this Complaint constitute an occurrence resulting in bodily injury or property damage as those terms are defined in the policy.
>
> With regard to the coverage provided under Coverage B – Personal and Advertising Injury Liability, the policy excludes any personal and advertising

---

2009. *See* 28 U.S.C. §§ 1441, 1446. On June 13, 2013, Judge James Zagel entered a default judgment against Steve Stergo and Stergo Roofing. (09 C 4764, R. 88, 89.) Mitch Frazen was one of the attorneys who represented Steve Stergo and Stergo Roofing in this other action. The Court also notes that in 2012, Scottsdale filed a declaratory action against Steve Stergo and Stergo Roofing in another federal action, *Scottsdale Insurance Co. v. Steve Stergo, et al.*, (12 C 3972), regarding the TCPA exclusion at issue in this lawsuit. In that case, Judge Charles Norgle entered a default judgment against defendants.

> injury arising out of materials whose first publication took place before the beginning of the policy period. Further the policy does not provide coverage for any publication occurring after the policy expired.
>
> Further, to the extent the damages awarded pursuant to a TCPA Complaint are deemed punitive in nature, coverage for such damages is prohibited as a matter of law.

(*Id.* ¶ 21.)

Under Illinois law, Scottsdale's reservations of rights was not conditional or equivocal. *See, e.g., Royal Ins. Co. v. Process Design Assoc., Inc.,* 221 Ill.App.3d 966, 974, 582 N.E.2d 1234, 1239, 164 Ill.Dec. 290, 295 (1st Dist 1991) (statement that there "may" be a question whether insurer would continue defense was inadequate notice). Rather, Scottsdale clearly outlined the policies at issue, the coverage dates, the exclusions, and its reservation of rights. *See Standard Mut. Ins. Co.*, 989 N.E.2d at 596. Brodsky, however, argues that these actions are not enough. More specifically, Brodsky contends that Scottsdale, either through Costilow or its counsel, failed to sufficiently explain to Steve Stergo the exact nature of the conflict of interest, how the conflict would increase Steve Stergo's exposure, Steve Stergo's right to control his defense, defense counsel's relationship with Scottsdale, and how Scottsdale's interests could be furthered by the conflict. Brodsky does not point to any legal authority that Scottsdale was required to inform Steve Stergo of these issues with the level of detail Brodsky suggests, especially in light of Scottsdale's offer to provide independent counsel at Scottsdale's expense.

In any event, Brodsky argues that because Scottsdale did not properly inform Steve Stergo of the issues as outlined immediately above and that he is an unsophisticated insurer, Steve Stergo did not give informed consent when choosing Frazen as his attorney. Brodsky also takes issue with the fact that Frazen is a "panel" attorney for Scottsdale, and thus he was not

13

"truly independent defense counsel" despite Steve Stergo unequivocally choosing Frazen as his defense counsel. As discussed above, however, Steve Stergo's own uncontested deposition testimony reveals that Costilow told him that he had the opportunity to choose his own defense counsel, that Scottsdale would pay for that defense counsel, and that Scottsdale did not limit his selection of defense counsel. Also, Steve Stergo testified at his deposition that had he known that Frazen was Scottsdale's "panel" counsel, he still would have chosen Frazen as his defense attorney. (Pl.'s Stmt. Facts ¶ 26.) Similarly, the record–even viewed in a light most favorable to Brodsky–does not support Brodsky's argument that Scottsdale "induced" Steve Stergo to chose Frazen and/or abandon control of his defense. (*Id*. ¶¶ 23-26.)

In addition, Scottsdale is not estopped from bringing its policy defenses because Steve Stergo admitted at his deposition that he was not prejudiced by Frazen's actions in defending the Underlying Action. In general, before an insurer can be estopped from asserting a defense of non-coverage, there must be a showing that the insurer's conduct prejudiced the insured. *See Maryland Cas. Co. v. Peppers,* 64 Ill.2d 187, 195, 355 N.E.2d 24, 29 (Ill. 1976); *Rosalind Franklin Univ. of Medicine & Science v. Lexington Ins. Co.,* 8 N.E.3d 20, 31, 380 Ill.Dec. 89, 100 (1st Dist. 2014). Because Scottsdale did not induce Steve Stergo to surrender control of his defense nor deny Steve Stergo his choice of counsel, the Court cannot presume prejudice as Brodsky argues. *See Standard Mut. Ins. Co.*, 989 N.E.2d at 596 ("prejudice will be found if the insurer's assumption of the defense induces the insured to surrender her right to control her own defense"); *see also Royal Ins. Co.,* 221 Ill.App.3d at 973 (the "reservation of rights is a means by which the insurer seeks to suspend the operation of estoppel doctrines; when an insurer defends a claim against its insured under a proper reservation of rights, the insured cannot then so easily

claim that it was prejudiced by the insurer's conflict of interest."). Instead, Brodsky must set forth evidence creating a genuine issue of material fact for trial that Frazen's conduct in defending the Underlying Action prejudiced Stergo.

At his deposition, Steve Stergo unequivocally testified that Frazen has done a good job for him, that he did not feel deprived of his counsel of choice, that there was no reason to abandon Frazen as his attorney, that if he went back to the beginning he would still chose Frazen, that Frazen made Stergo his priority, that he had a good relationship with Frazen, that he trusted Frazen, and that Frazen was loyal. *See, e.g., Indiana Ins. Co. v. CE Design Ltd.,* 6 F. Supp. 3d 858, 863 (N.D. Ill. 2013). Brodsky has failed to rebut this evidence or set forth any evidence of prejudice in the first instance. Without more, Brodsky's conflicted defense claim fails as a matter of law. The Court therefore grants Scottsdale's summary judgment motion and denies Brodsky's summary judgment motion in this respect.

## II.     Policy Coverage

In support of his motion for summary judgment, Brodsky asserts that the polices at issue "indisputably provide coverage for the claims asserted in the Underlying Action pursuant to the coverage grants for both Coverage A and Coverage B." (R. 61, Opening Mem., at 15; *see also* R. 76, Reply Mem., at 10; Resp Mem., at 15.) He further states that "[a]bsent an applicable exclusion, [] Scottsdale has a duty to defend and indemnify its insured, Stergo, for the Underlying Action." (Opening Mem., at 4; *see also* R. 70, Resp. Mem., at 5.) Brodsky does not make any further arguments as to coverage nor does Brodsky refute Scottsdale's assertion that based on the TCPA exclusions, there is no coverage under the policies for "property damage" or "personal and advertising injury."

15

Here, each of the four policies at issue contain the following TCPA exclusion: "EXCLUSION–VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION." The exclusion unequivocally and specifically states that the insurance policies do not apply to "bodily injury," "property damage," or "personal and advertising injury"... "arising directly or indirectly out of any action or omission that violates or is alleged to violate ... [t]he Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law." Reviewing the policies as a whole and giving the terms their plain and ordinary meaning, *see West Bend Mut. Ins.,* 794 F.3d at 673, the TCPA exclusions preclude coverage for the Underlying Action. *See G.M. Sign, Inc. v. State Farm Fire & Cas. Co.,* 2014 IL App (2d) 130593, ¶¶ 28, 38-39, 18 N.E.3d 70, 80 (2d Dist. 2014) (finding similar exclusion language unambiguous).

The Court therefore grants Scottsdale's motion for summary judgment, denies Brodsky's summary judgment, and enters judgment in favor of Scottsdale declaring that Scottsdale has no duty to defend or indemnify Steve Stergo and Steve Stergo Roofing under the policies CLS1236069, CLS158922, CPS1404489, and CPS1638989 in connection with *Lawrence S. Brodsky v. Steve Stergo d/b/a Stergo Roofing*, Case No. 13 CH 1380, in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois.

**CONCLUSION**

For these reasons, the Court grants Scottsdale's motion for summary judgment [63] and denies Brodsky's motion for summary judgment [60]. The Court dismisses this lawsuit in its entirety.

**Dated:** September 23, 2015

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**